Robert KABEL, Chairman of the District of Columbia Republican Committee, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS, Respondent.

No. 08–AA–1513.

District of Columbia Court of Appeals.

Decided Dec. 31, 2008.

Daniel E. Johnson and Charles R. Spies, Washington, DC, were on the Cross–Motion for Summary Reversal.

Kenneth J. McGhie and Terrie D. Stroud, were on the Motion for Summary Affirmance.

Before RUIZ, Associate Judge, FARRELL, Associate Judge, Retired, and NEBEKER, Senior Judge.

**PER CURIAM:**

Petitioner challenges the November 24, 2008, certification by the District of Columbia Board of Election and Ethics (the Board) of the results of the election of Michael A. Brown to the Council of the District of Columbia.[1] We reject the challenge.

## I.

Petitioner's attack upon the election of Mr. Brown rests on the following provision of the District of Columbia Self–Government and Governmental Reorganization Act codified at D.C.Code § 1–204.01(d)(3):

Notwithstanding any other provision of this section, at no time shall there be more than 3 members (including the Chairman) serving at large on the Council who are affiliated with the same political party.

Petitioner argues that, even though Mr. Brown had amended his voter registration in May 2008 to reflect a party change to "no party (independent)," he campaigned, practically speaking, "as a Democratic candidate for Council member at large" (Pet. Cross–Motion for Summ. Rev. at 1). For example, Mr. Brown's "campaign literature"—petitioner alleges—"consistently called him an 'Independent*Democrat,'" he attended the Democratic National Convention in Denver during the summer, and his website "noted that he was 'a surrogate speaker for the Obama/Biden Presidential Campaign,'" among other things (*id.*). Accordingly, petitioner maintains that Mr. Brown was "affiliated" with the Democratic Party within the meaning of § 1–204.01(d)(3), despite his change of registration.

The Board rejected this argument and certified the election results that made Mr. Brown, as an Independent, a member of the Council.[2] In doing so, the Board explained that although the election statute does not define the term "affiliated," other related provisions support the conclusion that the term denotes party registration as indicated by Board voter registration records. Petitioner's differing interpretation, the Board reasoned, would require it to look behind a declared non-affiliation in the voter registration records, thereby raising strong First Amendment concerns as the Board explored the "genuineness" of a candidate's claim of non-affiliation.

## II.

The Board initially argues, somewhat haltingly, that its authority to refuse to certify a candidate for membership on the Council is limited to deciding that he or she does not meet the "Qualifications for holding office" enumerated in D.C.Code § 1–204.02, all of which Mr. Brown concededly has met.[3] We do not view the Board's authority as that limited. The Board must refuse to certify for office a candidate whom it has "found to be

1. This matter is properly before the court by petition filed under D.C.Code § 1–1001.11(b)(1) (2001).

2. It is undisputed that there are already three at-large members of the Council who are registered Democrats.

3. Section 1–204.02 provides:
   No person shall hold the office of member of the Council, including the Office of Chairman, unless he: (1) Is a qualified elector; (2) is domiciled in the District and if he is nominated for election from a particular ward, resides in the ward from which he is nominated; (3) has resided and been domiciled in the District for 1 year immediately preceding the day on which the general or special election for such office is to be held; and (4) holds no public office (other than his employment in and position as a member of the Council), for which he is compensated in an amount in excess of his actual expenses in connection therewith[.]

ineligible to hold the office." *Id.* § 1–1001.10(b)(1). Had Mr. Brown (or any hypothetical candidate) won election to the Council as a fourth at-large member inarguably affiliated with the Democratic Party, we have no doubt that the Board could have enforced the contrary command of § 1–204.01(d)(3) and refused to certify him as "eligible" to take the office. The court itself, on review of a Board decision, is empowered to "[d]etermine[ ] that the candidate certified as the winner of the election does not meet the qualifications required for office." *Id.* § 1–1001.11(b)(2). The purpose of such review is to ensure "that the Board [has] performed its duty in a ... statutorily correct manner." *Pendleton v. District of Columbia Bd. of Elections & Ethics,* 433 A.2d 1102, 1104 (D.C. 1981). It follows, we think, that the Board is authorized to decide whether the election of an at-large member is lawful under the restriction imposed by § 1–204.01(d)(3), a decision the court may then review.

■ On the other hand, we have no difficulty in sustaining the Board's interpretation of the term "affiliated" as used in the statute.[4] Citing dictionary definitions, petitioner argues that the term cannot reasonably be equated with mere party membership (or not) as shown in the voter registration records, but instead must allow for inquiry into whether the candidate was "allied ... or associated with" a party in practice, despite a disavowal of membership in the registration record (Pet. Motion for Summ. Rev. at 5). However, petitioner points to nothing in the election statutes that compels or even points to that broad reading of the term. Rather, as the Board notes in its motion to affirm, the only other uses of the term in the statutes appear to delimit its meaning to party affiliation (or not) as shown by formal registration. *See* § 1–1001.07(a)(2) (an application to register to vote "shall indicate ... political party affiliation"); § 1–1001.07(c)(1)(F)(i) (the voter registration portion of Department of Motor Vehicles applications shall "[i]ndicate a choice of party affiliation (if any)"); § 1–1001.08(j)(3) (prohibiting direct nomination as a candidate in a general election to certain offices of a person "who is *registered to vote as affiliated* with a party qualified to conduct a primary election") (emphasis added).

■ Consequently, the most petitioner can reasonably assert is that the statutory meaning of "affiliated" in § 1–204.01(d)(3) was left unclear or ambiguous by the congressional drafters. In such circumstances, a court customarily defers to a reasonable interpretation of words by the agency charged with administering the statute. *See, e.g., Bates v. District of Columbia Bd. of Elections & Ethics,* 625 A.2d 891, 893 (D.C.1993). The Board's interpretation of "affiliated" plainly meets the test of reasonableness. Under petitioner's definition, by contrast, the Board would embark on a largely standardless quest to determine a candidate's "actual" allegiance by examining his day-to-day "associations" with one party or another, an inquiry the

---

4. Although the Board issued no written opinion in rejecting petitioner's challenge, there is no question, in our view, that the understanding of the term "affiliated" stated by the Board's counsel in its brief to the court represents the considered position of the Board. At a hearing on petitioner's challenge, counsel to the Board advanced the same position as grounds to reject the challenge, and the Board, in accepting that recommendation and rejecting the challenge, must be assumed to have accepted the reasons behind the recommendation. Moreover, petitioner concedes that in an earlier letter to him the Board spoke through its counsel in rejecting his challenge based on the Board's conclusion that it could not "look beyond candidates' registration records" to ascertain their "affiliat[ion]" or not with a party.

Board could fairly regard as beyond its practical competence—and even laying aside possible First Amendment objections to it.

Whether or not Mr. Brown's late conversion to the ranks of "Independent" somehow offends the spirit of § 1–204.01(d)(3) is not for courts to say. Because the Board has reasonably concluded that Mr. Brown's election did not contravene the at-large limitation, its decision to certify his election is

*Affirmed.*